UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SALLIE T. GORDON,

                                    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                                    Defendant.

Case No. 2:15-cv-01809-PAL

**ORDER**

(Mot. to Remand – ECF No. 17)
(Cross-Mot. to Affirm – ECF No. 20)

This matter involves Plaintiff Sallie T. Gordon's appeal and request for judicial review of the Acting Commissioner of Social Security, Defendant Nancy A. Berryhill's final decision denying her claims for widow's insurance benefits and disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33.[1] This case is referred to the undersigned magistrate judge for a determination and entry of final judgment pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. *See* Reference Order (ECF No. 21).

## **BACKGROUND**

On March 26, 2012, Ms. Gordon protectively filed applications for a period of disability and disability insurance benefits and widow's insurance benefits. AR 191–204.[2] She was 58 years old when she applied. AR 191–92. Gordon's work history includes jobs as an aesthetician from

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to the Federal Rules of Civil Procedure and the Social Security Act, the court therefore substitutes Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit. *See* Fed. R. Civ. P. 25(d) (allowing the automatic substitution of a successor to a public officer who is a party to an action but ceases to hold office while the action is pending); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] AR refers to the Administrative Record (ECF No. 14-1), a certified copy of which was filed on the court's docket under seal and delivered to the undersigned upon the Commissioner's filing of her Answer.

1

July 2000 through the 2011 application date, and as a hotel concierge for the short period of time from October 1999 to January 2000. AR 230. In her applications, Ms. Gordon claimed she was unable to work because of an acoustic schwannoma, temporomandibular joint syndrome (commonly referred to as "TMJ"), scoliosis, lumbal gia, and caerbica. AR 67, 222. The Social Security Administration (the "Agency") denied her application initially, AR 67–88, and on reconsideration, AR 89–116.

An administrative law judge ("ALJ") held a hearing on March 13, 2013, where Ms. Gordon appeared with her counsel. AR 20. In a hearing statement, counsel asserted that Gordon's symptoms included pain in her back, neck, leg, jaw, and wrist, hearing loss, headaches, dizziness, anxiety, and depression. AR 259–62. Certain postural movements such as bending, stooping, and lifting increased her pain, and each were required in her job as an aesthetician. AR 261. A customer service position would require lifting medium objects. AR 261. Thus, counsel theorized that even light jobs could not accommodate Ms. Gordon's restrictions. AR 261.

In a decision dated March 13, 2014, the ALJ found that Ms. Gordon was not disabled. AR 20–28. She requested review of the ALJ's decision by the Appeals Council, but the ALJ's decision became final when the Appeals Council denied review on July 22, 2015. AR 1–4. On September 21, 2015, Gordon filed a Complaint (ECF No. 1) in federal court, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Commissioner filed her Answer (ECF No. 11) on January 13, 2016. Ms. Gordon filed a Motion to Remand (ECF No. 17), and the Commissioner filed a Cross-Motion to Affirm and Response (ECF Nos. 18, 20).

The court has considered the Motion and Cross-Motion and Response. Ms. Gordon did not file a reply and the deadline to do so has expired. For the reasons explained, the court denies Gordon's Motion and grants the Commissioner's Cross-Motion.

## DISCUSSION

### I. APPLICABLE LAW

#### A. Judicial Review of Disability Determination

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). The statute provides

that after the Commissioner has held a hearing and rendered a final decision, a disability claimant may seek review of that decision by filing a civil lawsuit in a federal district court in the judicial district where the disability claimant lives. 42 U.S.C. § 405(g). The statute also provides that the district court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). But the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, a court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence'." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003). When the evidence will support more than one rational interpretation, a court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before a court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent upon an ALJ to make specific findings so that a court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). Mere cursory

findings of fact without explicit statements about what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). An ALJ's findings should be comprehensive, analytical, and include a statement explaining the "factual foundations on which the ultimate factual conclusions are based." *Id.*; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (an ALJ need not discuss all the evidence in the record, but must explain why significant probative evidence has been rejected).

## B. Disability Evaluation Process

A claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant must provide specific medical evidence to support his or her claim of disability. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). If a claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (noting that a claimant bears the burden of proof until the final step in the evaluation process).

## II. THE ALJ'S DECISION

An ALJ follows a five-step sequential evaluation process in determining whether a claimant is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step an ALJ makes a finding of disability or non-disability, no further evaluation is required. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Here, the ALJ followed the five-step sequential evaluation process and issued an unfavorable decision on March 13, 2014 (the "Decision"). AR 20–28. Ms. Gordon does not challenge the ALJ's findings at steps one through three but asserts legal error at step four. Specifically, she asserts the ALJ failed to propound a complete hypothetical question to the vocational expert that included the limitation of occasional fine hearing in her right ear.

/ / /

## A. Step One

The first step of the disability evaluation requires an ALJ to determine whether the claimant is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)–(b), 416.972(a)–(b). If the claimant is currently engaging in SGA, then a finding of not disabled is made. If the claimant is not engaging in SGA, then the analysis proceeds to the second step.

At step one in the Decision, the ALJ found that Ms. Gordon had not engaged in SGA since January 13, 2011, the alleged onset date. AR 23. Her earnings record shows that she earned $12,618 in 2011and $2,606 in 2012. AR 211. The ALJ noted that her 2011 earnings may be considered SGA, but she testified that she was "unaware of these earnings." AR 23. The ALJ gave her "the benefit of the doubt," and declined to make a determination at this step of the process. AR 23. Given her lack of SGA, the ALJ's analysis proceeded to the second step.

## B. Step Two

The second step of the disability evaluation addresses whether a claimant has a medically-determinable impairment that is severe or a combination of impairments that significantly limits him or her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (Jan. 1, 1985), SSR 96-3p, 61 Fed. Reg. 34468 (July 2, 1996); SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996).[3] If a claimant does not have a severe medically-determinable impairment or combination of impairments, then an ALJ will make a finding that a claimant is not disabled. If a claimant has a severe medically-determinable impairment or combination of impairments, then an ALJ's analysis proceeds to the third step.

---

[3] SSRs are the Agency's official interpretations of the Act and its regulations. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). SSRs are entitled to some deference as long as they are consistent with the Act and Agency regulations. *See Bray*, 554 F. 3d at 1223. "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Id*. at 1224.

At step two in the Decision, the ALJ found that Ms. Gordon had five severe impairments: (i) autistic neuroma, (ii) acoustic schwannoma, (iii) TMJ, (iv) lumbar scoliosis, (v) tinnitus, and (vi) venous insufficiency of the left lower extremity. AR 23. Gordon testified her impairments caused limitations in her ability to lift, carry, sit, stand and/or walk for extended periods and her symptoms also interfered with her ability to maintain concentration. *Id*.[4] The ALJ considered the alleged symptoms and limitations associated with all of Gordon's impairments, both severe and non-severe, in determining her residual functional capacity ("RFC"). *Id*. Because she had at least one severe medically-determinable impairment, the ALJ's analysis proceeded to the third step.

## C. Step Three

Step three of the disability evaluation requires an ALJ to determine whether a claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is commonly referred to as the "Listings." 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.826. If a claimant's impairment or combination of impairments meet or equal the criteria of the Listings and meet the duration requirement, 20 C.F.R. §§ 404.1509, 416.909, then an ALJ makes a finding of disability. 20 C.F.R. §§ 404.1520(h), 416.920(h). If a claimant's impairment or combination of impairments does not meet or equal the criteria of the Listings or meet the duration requirement, then the analysis proceeds to the next step.

At step three, the ALJ found that Ms. Gordon had not specifically alleged she had an impairment or combination of impairments that meet or medically equal one of the impairments described in the Listings. AR 23. Although she was found to have multiple severe impairments, the record did not document or support the level of severity required to meet or medically equal listings 2.07, 2.10, 1.04, 1.02, 11.14, 4.11, 4.12, or any other listing. AR 23. No treating or examining physician stated findings equivalent in severity to the criteria of any listed impairment. As such, the ALJ's analysis continued to Ms. Gordon's RFC.

---

[4] In addition to the severe impairments, Ms. Gordon's medical records showed a history of mild mitral valve disease. AR 23 (citing AR 340). However, the ALJ found this impairment to be "adequately treated and/or controlled." AR 23. Because the mitral valve disease did "not have more than a minimal effect on her ability to perform basic work activities," it was considered non-severe. AR 23.

**D.  Step Four – RFC**

The fourth step of the disability evaluation requires an ALJ to determine whether a claimant has the RFC to perform her past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f), 416.920(f). To answer this question, an ALJ must first determine a claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996).  In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996); SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996).  To the extent statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of a claimant's statements based on a consideration of the entire case record.  An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 as well as SSR 96-2p, 61 Fed. Reg. 34489 (July 2, 1996); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996); and SSR 06-3p, 71 Fed. Reg. 45593 (Aug. 9, 2006).

In making the RFC finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence."  AR 24.  He also considered opinion evidence.  *Id*.  Although the ALJ found that Ms. Gordon's medically determinable impairments could reasonably be expected to cause her alleged symptoms, he determined that Gordon's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC assessment.  *Id*.  The ALJ concluded that Ms. Gordon had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to the following exceptions and limitations:

> she is to avoid climbing ladders, ropes or scaffolds. She is also occasionally able to climb ramps or stairs, balance, stoop, crouch, crawl, and kneel. She is limited to occasional rotation, flexion and extension of her neck, as well as occasional fine hearing in her right ear. In addition, she requires use of compression stockings.

AR 24.

The Decision discusses the treatment of Gordon's autistic neuroma, acoustic schwannoma, tinnitus, headaches, back and joint pain, and venous insufficiency. AR 25–26 (citing AR 305–07, 321–28, 340–41, 370–72, 380–81, 402–07, 409–11, 419–26, 430). Records from September and November 2013 showed "fairly normal physical examination findings" and indicate that she "continued to receive routine conservative care for her symptoms." AR 26 (citing AR 445–49).

The ALJ addressed Gordon's physical consultative examination with David Mumford, M.D., on January 9, 2013. AR 26 (citing AR 432–440). Dr. Mumford's physical exam revealed normal findings in her HEENT, neck, chest, lungs, cardiovascular and musculoskeletal systems, and back, despite a suggestion of lumbar scoliosis. AR 434. Neurological findings included hearing loss on the right side, but no nystagmus, loss of sensation, facial weakness, or deviation of tongue protrusion. AR 435. Plaintiff also had 5/5 motor strength with normal muscle bulk and tone, no tremor or fasciculations, normal reflexes, coordination, and gait and station. AR 435. Dr. Mumford opined that in an eight-hour workday, Gordon was able to sit for six to eight hours, and stand and/or walk for six hours, with an assistive device in case of episodes of dizziness. AR 436. He found no restrictions in her ability to climb ramps or stairs, crouch, and crawl. AR 437. Gordon is also occasionally able to balance and stoop, but is to avoid climbing ladders and scaffolds, and work around heights. AR 437. The ALJ noted that although Dr. Mumford found limitations in Gordon's hearing, the doctor reported that "she was adequately able to engage in one on one conversation." AR 26–27 (citing AR 437). The ALJ afforded great weight to Dr. Mumford's opinion. AR 26.

The ALJ determined that the medical evidence did not support the alleged persistence or the degree of limiting effects regarding Ms. Gordon's pain in her neck and back, numbness and pain in her ankles and feet, daily headaches, dizziness, tinnitus, jaw pain, mild hearing loss in her right ear, and difficulty with concentration. AR 26. The ALJ found that her overall treatment history was "fairly conservative, consisting of medications and follow up visits," and her physical examination findings also appeared to be "within normal limits." *Id.* Additionally, her activities of daily living remained "intact," as she was "generally able to perform household chores such as laundry, cleaning and vacuuming," as well as "drive, grocery shop, and work two days a week as

an esthetician." *Id.*; *see also* AR 43–44, 235–39.

In sum, the ALJ determined that Ms. Gordon's RFC assessment was supported by and was consistent with the objective medical evidence, the record as a whole, the opinion of Dr. Mumford, and the state agency medical consultant's physical RFC assessment report. AR 27. Further, the ALJ found that the reports and testimony regarding Gordon's activities of daily living, as opposed to her alleged limitations, were consistent with and supported by the record in its entirety and therefore supported the RFC assessment. AR 27.

### E. Step Four – Ability to Perform PRW

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform her PRW. 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work a claimant performed within the last 15 years, either as the claimant actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b). In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965. If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

At step four in the Decision, the ALJ concluded that Ms. Gordon is capable of performing her PRW as a concierge. AR 27. The concierge job is performed at a sedentary level of exertion, semi-skilled work with a specific vocational profile ("SVP") of 4. *Id.*[5] After comparing Gordon's RFC with the physical and mental demands of her PRW, the ALJ found that she is able to perform her PRW as it is generally performed. *Id.* Because the ALJ found that Gordon was able to perform her PRW, the ALJ determined that she has not been disabled from January 13, 2011, through the date of the Decision. AR 27. Accordingly, the analysis did not proceed to step five.

/ / /

/ / /

/ / /

---

[5] The Dictionary of Occupational Titles (DOT) describes Plaintiff's PRW as a concierge or "travel clerk" at No. 238.367-030, 1991 WL 672209. AR 27.

**ANALYSIS AND FINDINGS**

Reviewing the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the court finds the Decision is supported by substantial evidence and the ALJ did not commit legal error.

The sole issue on appeal is whether the ALJ committed reversible error for posing an incomplete hypothetical to the vocational expert. Ms. Gordon seeks reversal and remand of the Decision claiming the ALJ failed to properly set forth a legally sufficient hypothetical to the vocational expert. Pl.'s Mot. (ECF No. 17). She reasons that her PRW as a concierge requires "frequent hearing to perform" and the ALJ's failure to include the limitation of occasional fine hearing in Gordon's right ear when he propounded a hypothetical question to the vocational expert was reversible error. According to the DOT, the concierge position requires frequent hearing. Gordon contends the limitation to occasional fine hearing in her right ear impacts her ability to perform the PRW as a concierge. Because the ALJ failed to propound a hypothetical to the vocational expert including her hearing limitation, Gordon claims the hypothetical was deficient and the vocational expert's response has no evidentiary value. She argues reversal and remand are appropriate to correct this legal error.

The Commissioner seeks affirmance of the Decision arguing that the ALJ properly determined that Ms. Gordon could perform her PRW based on the DOT. Cross-Mot. & Resp. (ECF Nos. 18, 20). Citing agency regulations and relevant case law, the Commissioner notes that an ALJ need not consult a vocational expert or rely on a vocational expert's testimony when evaluating a claimant's ability to return to his or her PRW. Here, the ALJ did not rely on the vocational expert's testimony; rather, he relied on other reliable evidence—the DOT. Pursuant to the DOT, Gordon's PRW as a concierge was performed at a sedentary exertional level with no climbing, balancing, stooping, kneeling, crouching or crawling. Thus, according to the DOT, the physical demands of the concierge occupation did not exceed her RFC.

The Commissioner further argues that Gordon does not present any authority for her assertion that she cannot perform her PRW as a concierge because it requires more than occasional fine hearing in her right ear. The DOT indicates a concierge's hearing is used "frequently." The

DOT does not specify a requirement of *fine* hearing.[6]  The Commissioner therefore contends that Gordon's reliance on the DOT to conclude she cannot perform her PRW is misplaced.  Even if the DOT indicated a concierge must engage in frequent *and* fine hearing, such requirements would not preclude Gordon from performing her PRW because she has no restriction on fine hearing in her *left* ear.  Nothing in the DOT suggests that the hearing requirement must be performed with *both* ears.  Thus, to the extent her PRW as a concierge would require fine hearing, Ms. Gordon could perform fine hearing with her left ear.  Accordingly, the Commissioner maintains that the Decision is supported by substantial evidence and free from legal error.

As an initial matter, the court finds that Ms. Gordon and her counsel did not object on the basis of an incomplete hypothetical during her administrative hearing or her request for review by the Appeals Council.  *See* AR 55–62, 259–64.  When " 'claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal'."  *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (quoting *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999)).  This rule upholds the "fundamental principle that an agency, its experts, and its administrative law judges are better positioned to weigh conflicting evidence than a reviewing court."  *Id.*  Such waiver is also consistent with the Social Security Act, which provides that "a reviewing court presented with new evidence may remand to the agency for consideration of that evidence, but only upon a showing of 'good cause for the failure to incorporate such evidence into the record in a prior proceeding'."  *Id.* (quoting 42 U.S.C. § 405(g)).  Upon review of the administrative record, it is clear that Gordon raised the issue of the incomplete hypothetical for the first time on judicial review before this court.  She was represented by counsel during her administrative hearing and her request for review by the Appeals Council.  Gordon has not shown good cause, or suggested any reason at all, for the failure to challenge what she now claims is an incomplete hypothetical posed by the ALJ in the prior proceedings.  As such, she has waived the

---

[6]  The court notes that the DOT does not define "fine hearing."  *See, e.g.*, *Sloss v. Colvin*, 2015 WL 4628144, *6 (D. Or. Aug. 3, 2015)* ("The DOT does not have a definition for 'fine hearing capacity'.").  Moreover, neither side has provided the court with a medical or legal definition of the term.  When used as an adjective, the word "fine" generally indicates a superior or high quality.  *See* "fine, adj., adv., and n.2." *Oxford English Dictionary* (OED 3d ed. 2016), available at www.oed.com/view/Entry/70361.

argument. Nevertheless, considered on its merits, Gordon's argument also fails as a matter of law.

At step four, a claimant has the burden of proving she is unable to return to her PRW. *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017). The ALJ must determine whether the claimant can perform the actual functional demands and duties of a particular past relevant job, or the functional demands and duties of the occupation as generally required by employers throughout the national economy. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (citing SSR 82-61). In making this finding an ALJ may rely on the DOT or choose to invoke the expertise of a vocational expert. 20 C.F.R. § 404.1560(b)(2). "The DOT is considered to be the '*best source* for how a job is generally performed'." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 n.3 (9th Cir. 2009) (quoting *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1166 (9th Cir. 2008)) (emphasis added). Vocational expert testimony may be helpful, but is not required at step four. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Where other reliable evidence such as the DOT supports the step four determination, an ALJ's omission of a limitation in a hypothetical posed to a vocational expert, if error, is harmless because the vocational expert's testimony is not required. *Id.* ("Whether or not the ALJ erred in not including all of Matthews' limitations in a hypothetical is thus irrelevant given the other reliable evidence.").

Here, the court finds the ALJ properly considered the record and found that Ms. Gordon could perform her PRW as a concierge. AR 27. Gordon claims the ALJ's failure to ask the vocational expert a hypothetical including the limitation to occasional fine hearing in her right ear constitutes reversible error. This is based on the limitation stated in her RFC and the DOT's description of the concierge position as requiring "hearing: frequently … from 1/3 to 2/3 of the time." *See* 1991 WL 672209. Gordon's contention that the concierge position exceeds her abilities is erroneously premised on the assumption that the *frequent* hearing the concierge position requires necessarily involves *fine* hearing with *both* ears. However, the DOT does not state a bilateral requirement of fine hearing. Gordon provides no authority to support this argument.

Although the context is different, federal courts have held that occupations requiring reaching, handling, and/or fingering do not necessarily involve the use of both hands when the DOT does not state a bilateral requirement. *See, e.g.*, *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir.

2000) (finding that a claimant with use of only one arm could perform jobs requiring fingering and handling because the DOT did not require that fingering and handling be done with bilateral arms/hands); *Palomares v. Astrue*, 887 F. Supp. 2d 906, 920 (N.D. Cal. 2012) (although plaintiff was limited to occasional overhead reaching on his left arm, the DOT does not explicitly require reaching with both arms and he had no limitations on his right arm; thus, the ALJ did not err at step four).[7] Ms. Gordon does not claim she is limited or incapable of frequent (or fine) hearing with her left ear and no medical evidence in the record suggests as much. The DOT's description of the requirements for working in a concierge position are consistent with the ALJ's findings concerning Gordon's RFC and his findings at step four.

The Decision demonstrates that the ALJ considered the demands of Ms. Gordon's PRW and made the requisite findings. She is able to perform the concierge job as it is customarily performed in the national economy. The concierge job is not precluded by her RFC, which includes the limitation to "occasional fine hearing in her right ear." AR 24, 27. The ALJ questioned the vocational expert, asking him to describe Gordon's PRW as an aesthetician and a concierge. AR 56. Based on Gordon's RFC limitation to occasional neck rotation, flexion, and extension, the ALJ ruled out the aesthetician job. AR 27, 56–61. But her RFC did not preclude work as a concierge. *Id*. The ALJ found that the vocational expert's testimony was consistent with the information in the DOT. AR 27. Nevertheless, regulations and applicable case law make it clear that the vocational expert's testimony was unnecessary because the ALJ found Gordon was capable of returning to her PRW. *See* 20 C.F.R. § 404.1560(b)(2); *Matthews*, 10 F.3d at 681. Thus, even if the ALJ erred by omitting a fine hearing limitation in the hypothetical posed to the vocational expert, the error would be "irrelevant" because the ALJ relied on other reliable evidence

---

[7] *See also Diehl v. Barnhart*, 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005) (claimant with limited use of one arm could perform jobs requiring frequent reaching, handling, and fingering; thus, there was no conflict between DOT and vocational expert's testimony to that effect); *Ikhiede v. Berryhill*, No. 2:16-cv-02283-JAD-CWH, 2017 WL 4619021, at *6 (D. Nev. Oct. 16, 2017) (noting that DOT job descriptions of the identified jobs did "not require frequent reaching with both arms" and Plaintiff did not allege any limitation with her right arm), *report & recommendation adopted*, 2017 WL 5505576 (D. Nev. Nov. 16, 2017); *Landrum v. Colvin*, 2013 WL 3819675, at *6 (C.D. Cal. July 23, 2013) ("Case authority establishes that the DOT does not require use of both arms."); *Feibusch v. Astrue*, 2008 WL 583554, at *5 (D. Haw. Mar. 4, 2008) ("[T]he use of two arms is not necessarily required for jobs that require reaching and handling.").

and was not obligated to use the vocational expert's testimony.  *See Matthews*, 10 F.3d at 681.

The cases upon which Ms. Gordon primarily relies to support her argument are inapplicable because each involves step five determinations where the burden of proof had already shifted to the Commissioner.  *See, e.g.*, *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work."); *Gamer v. Sec. Health & Human Srvs.*, 815 F.2d 1275, 1279–80 (9th Cir. 1987) ("Absent other reliable evidence of a claimant's ability to perform specific jobs, the Secretary must use a vocational expert." (internal quotation omitted)).  In this case, Gordon claims the ALJ committed reversible error at step four.  At step four, Gordon still had the burden of showing she was unable to return to her PRW as a concierge.  The ALJ relied on other reliable evidence—the DOT—to determine her ability to perform the physical and mental demands of the concierge position.  The Ninth Circuit has held that the DOT is the "best source" for the ALJ use in comparing Gordon's RFC with the duties and demands of her PRW.  *See Bray*, 554 F.3d at 1230 n.3; *Pinto*, 249 F.3d at 845 (citing SSR 82-62).  The vocational expert's testimony, although consistent with the DOT and helpful, was not essential to the Decision.  Ms. Gordon failed to meet her burden of showing she could not return to her PRW as a concierge.  Thus, the ALJ's step four determination is supported by substantial evidence.

## **CONCLUSION**

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole.  It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record as a whole, and resolve conflicts in the evidence and differences of opinion.  Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g).

Accordingly,

/ / /

/ / /

14

**IT IS ORDERED:**

1. The Clerk of Court shall **SUBSTITUTE** Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.

2. Sallie T. Gordon's Motion for Reversal and/or Remand (ECF No. 17) is **DENIED**.

3. The Commissioner's Cross-Motion to Affirm (ECF No. 20) is **GRANTED**.

4. The Clerk of Court is instructed to enter judgment accordingly and close this case.

Dated this 19th day of September, 2018.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE